IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

KINZIE STEUBE,

                Plaintiff,                      OPINION AND ORDER

    v.

                                                  19-cv-522-wmc

SANTANDER CONSUMER USA INC. and
PHANTOM RECOVERY LLC,

                Defendants.

Plaintiff Kinzie Steube claims defendant Phantom Recovery LLC violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1592, and Phantom and co-defendant Santander Consumer USA Inc., violated the Wisconsin Consumer Act, Wis. Stat. § 425, based on Phantom's repossession of a vehicle financed by Santander.  Before the court are the parties' cross-motions for summary judgment (dkt. ##40, 46), and plaintiff's motion for judgment on the pleadings as to certain of defendants' affirmative defenses (dkt. #28).  The court will grant defendants' motion for summary judgment because the undisputed facts do not support a reasonable jury's finding that (1) plaintiff verbally protested the repossession as required by both the WCA and the FDCPA; or (2) defendant Phantom threatened or harassed Steube or attempted to enforce a right that it knew did not exist to support her alternative WCA claim.  In light of these conclusions, the court need not reach the merits of plaintiff's motion for summary judgment and motion for judgment on the pleadings concerning defendants' affirmative defenses, and will deny those motions as moot.

UNDISPUTED FACTS[1]

**A. Retail Contract, Default and Replevin Judgment**

On May 16, 2017, plaintiff Kinzie Steube purchased a 2017 Ford Fusion. In purchasing the vehicle, Steube entered into a "Retail Installment Sale Contract, Simple Finance Charge" (the "Contract") with defendant Santander Consumer USA Inc., for $24,566.70. The vehicle itself acted as security for this loan.

The Contract defines "default" as "an amount that is more than one full payment is more than 10 days past due." (Ehrke Aff., Ex. A (dkt. #41-1) 4.) The Contract also states that "if you default, we may take (repossess) the vehicle from you after we give you any notice the law requires. . . . [O]ur right to take the vehicle is subject to any right the law gives you to demand a court hearing before we take it." (*Id.*) The Contract further states that:

> [i]f we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. You may have to pay expenses we pay as a direct result of taking and holding the vehicle as the law permits. Your right to redeem ends when we sell the vehicle.

(*Id.* at 5.)

Steube did not make any payments on the loan after May 2018, and she does not dispute that she was in default on her loan. Steube further testified at her deposition that she understood the vehicle could be taken from her if she failed to make payments.

Based on Steube's default, Santander obtained a judgment of replevin dated

---

[1] Unless otherwise noted, the court finds the following facts material and undisputed, viewed in the light most favorable to the plaintiff.

December 26, 2018, entitling Santander to "immediate possession" of the Ford Fusion. (Ehrke Aff., Ex. B (dkt. #41-2).) Steube does not dispute this either, although she points out that the Wisconsin Consumer Act still applies even if a replevin judgment exists. Regardless, Steube was aware of the replevin judgment by the date of its repossession.

Santander does not repossess vehicles by itself, but instead uses a third-party to repossess vehicles. In May or June 2019, defendant Phantom Recovery LLC received a repossession order for the vehicle from Skipbusters, a forwarding agent for Santander.

### B. Repossession

On June 26, 2019, Phantom employees Greg Langron and Daniel Davenport located the vehicle at Steube's friend's house at 10911 Gladys Lane in Edgerton, Wisconsin. Upon verifying the VIN on the vehicle, Langron and Davenport backed the Phantom tow truck up to the vehicle, attached it to the lift, lifting it at least partially off the ground.

At this point, Langron knocked on the front door to ask for the keys so that the vehicle could be towed without scuffing the driveway. Plaintiff questions whether this was in fact Langron's motivation, and she also points out that defendant Phantom's Policy and Procedures state that "[a]ll field employees are trained to limit debtor contract whenever possible, to limit the potential of a debtor misinterpretation of any employee's actions or communications." (Pl.'s Resp. to Defs.' PFOFs (dkt. #59) ¶ 21 (citing Miller Decl., Ex. B (dkt. #61-2)).) Motivation aside, from the point when Langron and Davenport located the vehicle until they left with the vehicle, Langron had a body camera operating that recorded video and audio, at least leaving no material dispute as to most of what Langron

3

actually said. Davenport also had a camera in his sun glasses that recorded a short portion of the exchange when Langron returned to the truck to retrieve garbage bags for Steube to use to gather her personal items in the vehicle.

Originally, a man answered Langron's knock on Steube's door, at which point, Langron asked if "Kinzie" was there, and a woman identified as Kinzie Steube came to the door. Langron then advised Steube that they were there to pick up her Ford Fusion, to which she responded, "can you, like, give me a minute? I have a lot of shit in there." (Langron Aff., Ex. F (dkt. #43-4) 3.) Steube then asked if the agents could "lower it a bit so I can get the stuff out of my trunk." (*Id.*)

At the vehicle, Langron and Steube had the following material exchange:

> Mr. Langron: (Inaudible). There's a replevin on it.
>
> Ms. Steube: Yeah, I know. I'm in the process of getting it off, so I don't know what -- who it is that you're going through to take it. Because they can't --
>
> Mr. Langron: Santander.
>
> Ms. Steube: Okay. Because I just was already setting this all up with them.
>
> . . .
>
> Mr. Langron: If it was set up, they would put a stop on it, but nothing's set up.
>
> Ms. Steube: How can I call them to get it so you cannot take it? I can't call them and have them put a stop on it?
>
> Mr. Langron: No. (Inaudible).
>
> Ms. Steube: What do you mean?
>
> Mr. Langron: (Inaudible) only one company out there that does that, and that's Credit Acceptable. (Inaudible).

4

>   Ms. Steube:  Okay.  Okay.  Well, there's a lot of shit, so --

(*Id.* at 3-5.)  After this exchange, Steube and Langron returned their attention to removing her items from the vehicle, with Langron retrieving garbage bags for Steube to use to remove her items.

Langron and Steube next then discussed how and whether Steube could get her car back, and specifically discussed Steube's filing, or more accurately, her plan to file for bankruptcy:

>   Mr. Langron:  Well, if you work it out, they have to give it back to you anyway.  They got -- you got 15 days.
>
>   Mr. Steube:  I was in the middle of filing bankruptcy.  So --
>
>   Mr. Langron:  Oh, once you do that, they have to give it back anyway.
>
>   Ms. Steube:  I'm filing.  I already filed bankruptcy.
>
>   Mr. Langron:  Did you?  Okay. Well, then they'll . . . have to give it back to you.  Yeah.
>
>   Ms. Steube:  Yeah, I don't know how they can take it.  How do I -- how am I supposed to get it back, though, if I already filed bankruptcy?
>
>   Mr. Langron:  We'll give you our number.  It only goes to Janesville.

(*Id.* at 8.)

Langron then explained that the vehicle would be held for at least 15 days before being auctioned.  Steube pressed Langron for more information:

>   Ms. Steube:  I know, but how do I go about getting that fixed, since I'm filing bankruptcy?  I -- I don't know how I'm supposed to do that.
>
>   Mr. Langron:  Call Santander with your case number, and then

5

> the automatic stay means they can't sell it, so they have to give it back to you, because they can't do any actions for collection of debt.
>
> Ms. Steube: Okay. Like, what if I'm still paying my bankruptcy off, then? Does that still make a difference?
>
> Mr. Langron: Yeah, you have to have a case number. Once you have a case number, you're all right.

(*Id.* at 9.)

Langron then provided Steube advice on how to file for bankruptcy *pro se* with the assistance of a packet of forms she could purchase from Office Depot, and he also advised that she "'F' the attorney and just go up" to Madison to file. (*Id.* at 10-11, 15.) Steube again asked if "I fucking file the bankruptcy and put it in, they can give me my car back?," and Langron responded, "They have to. They have no choice. Once you have a case number through the federal bankruptcy court in Madison, they -- they have to give you your car back." (*Id.* at 11.)

Steube again sought reassurance that she would be able to get her car back once she filed for bankruptcy, stating, "You're not lying to me just so I'll let you take my car?," to which Langron responded, "No . . . . I used to work in credit unions doing collections, so I've done all of this." (*Id.* at 15-16.) Again, Steube asked, "You're sure I'll be able to get my car back?", to which Langron responded, "Yeah, they have to. It's the law. You can Google that shit. You can google it." (*Id.* at 16.) Steube then mentioned that her attorney had told her that "even if I filed bankruptcy, they can still -- still come and try to take it because I (inaudible)." (*Id.*) Even then Langron opined, that Santander could not take the car "until it's discharged." (*Id.*) In response, Steube stated, that she was "[k]ind of

6

glad you're taking it because now I'm going to get it back. Save my money. Saving me a lot of money." (*Id.* at 17.) The conversation continues, reiterating the same topics, including: the advantages of filing for bankruptcy *pro se;* her ability to get the car back once she obtained a case number; and the bad financing arrangement Steube had obtained when she purchased the vehicle.

At the end of the discussion, Langron and Davenport departed with Steube's vehicle approximately 20 to 25 minutes after they had arrived.

### C. Post-Repossession Actions

Steube did in fact file for bankruptcy on June 27, 2019, the day after the repossession. While she originally filed it *pro se*, she eventually retained an attorney. Moreover, as described above, Steube had at least consulted with an attorney before filing for bankruptcy, and it appears she had paid him a retainer as part of that consultation.

Steube also testified at her deposition that she called the repossession agency at some point, but could not remember what was said in the conversation. For its part, defendant Santander represents that its employees in the bankruptcy department followed procedure in communicating with Steube. In particular, the employees told Steube what she needed to do to get her car back. For Wisconsin debtors, Santander's policy is that for a vehicle repossessed before filing for Chapter 7 bankruptcy, a debtor would need to pay past due payments of interest and principal and any repossession fees.

Steube's car was never returned.

OPINION

**I.  FDCPA and WCA Claims based on Protest or Objection**

Plaintiff claims that both in repossessing her vehicle, defendants Phantom and Santander violated Wisconsin Statute § 425.206(2), which states, "[i]n taking possession of collateral or leased goods, no merchant may . . . [c]ommit a breach of the peace." *See also Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 811-12, 508 N.W.2d 449, 455 (Wis. Ct. App. 1993) (holding that repossession over verbal protest, constitutes a breach of the peace in violation of the WCA). Plaintiff also claims that Phantom violated the FDCPA, 15 U.S.C. § 1692f(6), in repossessing her vehicle. *See Russell v. Santander Consumer USA, Inc.*, No. 19-CV-119, 2019 WL 4572882, at *3 (E.D. Wis. Sept. 20, 2019) ("Courts presented with the issue of determining whether a repossession agency has violated § 1692f(6) look to the applicable state self-help repossession statute which identifies the circumstances under which an enforcer of a security interest does not have a present right to the collateral at issue.").

Defendants posit two bases for granting summary judgment in their favor on these claims: (a) Phantom already had control of dominion and control of the vehicle by the time Steube engaged with Langron; and (b) Steube did not protest the repossession.[2] The court will address each argument separately.

---

[2] Defendants also argue that plaintiff's allegations only implicate *Phantom* and, therefore, Santander should be dismissed on that basis alone. The court, however, need not reach this argument in light of its finding that summary judgment in defendants' favor is warranted because of the lack of evidence that plaintiff actually protested the repossession.

A. Had Dominion and Control over Vehicle

Defendants argue that the undisputed facts "show that the vehicle was up and on the hook and ready to go before any discussions occurred" and, therefore, "Phantom had dominion and control of the vehicle before there was any kind of interaction with Steube." (Defs.' Opening Br. (dkt. #44) 11.) In support of this argument, defendants direct the court to cases from other jurisdictions, interpreting other state's consumer act provisions concerning repossession of vehicles equivalent to the WCA. Most of the cases are distinguishable from the facts here because the oral protest occurred *after* the vehicle was actually removed, in some instances an hour or more after the removal of the vehicle. *See James v. Ford Motor Credit Co.*, 842 F. Supp. 1202, 1209 (D. Minn. 1994), *aff'd*, 47 F.3d 961 (8th Cir. 1995) (explaining repossessor was in "control of the car for approximately one hour after he removed it from the parking lot," and it was only as he was driving away that the debtor protested); *Wallace v. Chrysler Credit Corp.*, 743 F. Supp. 1228, 1233 (W.D. Va. 1990) (altercation occurred hours after the repossession); *Cofield v. Randolph Cty. Comm'n*, 90 F.3d 468, 471–72 (11th Cir. 1996) (acknowledging that plaintiff's "own testimony places the Blazer off, or exiting, the premises by the time they reached their front door to contest the repossession"); *Clark v. Auto Recovery Bureau Conn., Inc.*, 889 F. Supp. 543, 547 (D. Conn. 1994) (explaining that when "plaintiff arrived at the scene, the repossession crew had already removed the Saab from its parking place").

The closest case factually that plaintiff points out is *Thompson v. First State Bank of Fertile*, 709 N.W.2d 307, 311 (Minn. Ct. App. 2006), in which the court held "once a creditor has gained control of collateral, repossession is complete, and a debtor cannot

9

regain legitimate control of the collateral by resisting or objecting to the creditor." In *Thompson*, the court concluded that lifting the vehicle's wheels from the ground signaled the repossession agent had "sufficient dominion" to render the repossession complete. *Id.* In response, plaintiff contends that this holding does not reflect the state of Wisconsin law, directing the court to a recent decision from the Eastern District of Wisconsin, which rejected a defendant's argument that repossession was complete because the defendant had "lifted the vehicle's rear wheels off the ground before [the plaintiff] objected." (Pl.'s Opp'n (dkt. #58) 3 (quoting *Russell v. Santander Consumer USA, Inc.*, 2020 U.S. Dist. LEXIS 101404, at *13 (E.D. Wis. June 9, 2020).) Even more specifically, the Eastern District Court rejected application of cases from other states because "the WCA expressly states that it should be liberally construed and applied to promote the underlying purposes and policies of the statute." (*Id.* at 3-4 (quoting *Russell*, 2020 U.S. Dist. LEXIS 101404, at *13).) Plaintiff further points out that the court in *Hollibush* -- the key Wisconsin case describing the standard for protesting as addressed more fully in the next section -- placed no weight on the fact that the defendant had hooked up the plaintiff's vehicle outside of a tavern before the verbal protest occurred. (*Id.* at 4 (citing *Hollibush*, 179 Wis. 2d at 804, 508 N.W.2d at 451).)

Putting aside this legal challenge, the undisputed facts here support a finding that while Phantom may have had dominion and control over Steube's vehicle to remove it from the property and complete the repossession, it arguably relinquished that control by lowering the vehicle to allow Steube to remove her personal items, or at least a reasonable jury could so find. As such, the court rejects this basis for summary judgment.

### B. Lack of Protest or Objection

However, as noted, defendants also seek summary judgment on the basis that plaintiff did not protest or object to the repossession. As cited above, the Wisconsin Court of Appeals considered what constituted a "breach of the peace" under the WCA in *Hollibush*, relying on cases from other jurisdictions and the UCC, in holding that "a verbal objection to a repossession is the precursor to violence, and that it should not be necessary for a debtor to resort to violence to provide the breach of the peace necessary to defeat a self-help repossession." 179 Wis. 2d at 811, 508 N.W.2d at 455. In that case, the court of appeals further found plaintiff or her fiancé's statement to defendant's agent "that he was not to repossess the vehicle" defeated the defendant's use of self-help repossession, which in turn violated the WCA. *Id.* at 812, 508 N.W.2d at 455.

In contrast, defendants argue that "Steube never unequivocally objected and there was no breach of the peace as contemplated by *Hollibush*." (Defs.' Opening Br. (dkt. #44) 19.) In response, plaintiff contends that: (1) the *Hollibush* case does not require an "'unequivocal' oral objection"; and (2) "[a] reasonable jury would interpret Ms. Steube's words to mean that she was objecting to the repossession." (Pl.'s Opp'n (dkt. #58) 5, 9.) *First*, as to the proper standard, while the court did not use the phrase "unequivocal oral protest" in its holding -- instead, as quoted above, using the term "verbal protest"-- the *Hollibush* court quoted approvingly from an Indiana Court of Appeals decision and a treatise on the UCC, which both adopted that specific phrase. *Hollibush*, 179 Wis. 2d at 808, 810, 508 N.W.2d at 453-54.

More to the point, in describing what constitutes a protest for purposes of

constituting a "breach of the peace," the *Hollibush* court explained that while consent of the debtor it not required, "a debtor's affirmative statement to a person in the process of repossessing collateral that the collateral may not be taken" *is* required. *Id.* at 806, 508 N.W.2d at 452-53. Moreover, cases citing to *Hollibush*, including a case from the Seventh Circuit, similarly required an express statement that the agent seeking to repossess the vehicle may not take it. *See, e.g., United States v. Alexander*, 573 F.3d 465, 475 (7th Cir. 2009) ("But *Hollibush* does not stand for the proposition that the mere fear of resistance by the debtor is a breach of the peace. Instead, *Hollibush* held that the creditor's agent breached the peace by repossessing the debtor's vehicle when the debtor or her fiancé told the agent not to repossess the vehicle."); *Russell v. Santander Consumer USA, Inc.*, No. 19-CV-119, 2019 WL 4572882, at *5 (E.D. Wis. Sept. 20, 2019) ("Under Wisconsin law, if a creditor repossesses in disregard of the debtor's unequivocal oral protest, the creditor commits a breach of the peace."); *Jackson v. City of Milwaukee*, No. 12-CV-00490, 2013 WL 3154073, at *1 (E.D. Wis. June 20, 2013) ("A breach of the peace occurs when a creditor either resorts to violence or takes property over the express objection of the debtor."). At minimum, the law requires the debtor to expressly state that the repossessor may not take the vehicle.

Nevertheless, plaintiff contends that Steube "objected by asking the repossession agents to leave the vehicle and not to take it, and the repossession agents refused." (Pl.'s Opp'n (dkt. #58) 5.) In support, she cites to her deposition testimony in which Steube testified that she "asked them to leave the car and not take it." (Steube Dep. (dkt. #38) 74.) The transcript of Steube's conversations with Phantom's agents, however, belies a

12

direct, express statement by Steube asking, much less telling, Langron or Davenport not to take her car. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

As quoted above, Steube simply asked, "How can I call them to get it so you cannot take it? I can't call them and have them put a stop on it?" (Langron Aff., Ex. F (dkt. #43-4) 4.) That question and the subsequent conversation with Langron focusing on how the vehicle could be returned if she filed for bankruptcy certainly shows disappointment and frustration with the repossession, as well as a desire either to retain her car or have her car returned soon, but it falls far short of constituting a verbal assertion of her right to retain it or objection to its repossession, or at least a reasonable jury must find based on the undisputed facts. If anything, the exchange between Steube and the Phantom's employee, Langron reflects her acknowledgment of, or at least resignation to, his right to repossess the vehicle, and certainly *never* any disagreement that might have escalated into a disturbance of the peace. Accordingly, the court will grant defendants' motion for summary judgment on plaintiffs' claims that defendant violated the WCA and the FDCPA by breaching the peace in repossessing her vehicle.

## II. WCA Claim based on Langron's Misrepresentations / Harassment

Perhaps recognizing the weakness of her claims under Wisconsin Statute § 425.206(2) premised on an alleged breach of peace, plaintiff amended her complaint to add a Count 3, claiming a violation of Wisconsin Statute § 427.104(1). Specifically,

plaintiff claims a violation of subsection (1)(h), which provides that a debt collector may not "engage in other conduct which [could] reasonably be expected to threaten or harass the customer or a person related to the customer," and subsection (1)(j), which provides that a debt collector may not "[c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist." Wis. Stat. § 427.104(1)(h)(j). Plaintiff contends that defendant Phantom violated both of these subsections when its employee Langron told Steube that she could get her car back if she filed for bankruptcy.

While it appears undisputed that parts of Langron's statement were incorrect, or at least contrary to defendant Santander's stated policy, plaintiff does not explain how Langron's statement constitutes a violation of either of the cited WCA subsections. For its part, defendant Phantom offers several bases for summary judgment on these additional claims, but the court need only consider one: plaintiff has no evidence that Langron intended to mislead Steube; in other words, that Langron knew what he was telling Steube was false. In response, plaintiff contends that the WCA is a strict liability statute, and, therefore, one need not delve into Langron's motives. (Pl.'s Opp'n (dkt. #58) 13 (citing an FDCPA claim in support and arguing that the WCA should be construed in coordination).) While this argument makes some sense in the context of a notice from a debt collector that conveys false information about privacy disclosures, *see Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009), it makes no sense given the claims at issue here. In particular, the only possible basis for finding Langron's statement remotely *harassing* or *threatening* is if the jury were to find that he knew Steube would not be able to obtain her car after filing for bankruptcy, but nonetheless told her otherwise. From the

14

court's review of the conversation between Langron and Steube, however, a reasonable jury could not find his statements to be intentionally misleading to the point of harassment or a threat. Far from it, Langron appears to have remained wholly civil, even helpful, throughout the exchange.

This leaves plaintiff's claim under § 427.104(1)(j), which appears to be based on a claim that Langron's statement lulled plaintiff into allowing the repossession to occur, effectively "buying" her silence. As an initial point, this argument is contrary to plaintiff's position that she verbally objected to the repossession. Putting that issue aside, however, plaintiff has failed to raise a genuine issue of material fact as to Phantom's right to repossess the car. Given that failure, there is no basis for finding that by mistakenly stating that Steube could get her car back after she filed for bankruptcy, Langron claimed, attempted or threatened to enforce a right with knowledge or reason to know that the right does not exist. Even if subsection (1)(j) were read to include some sort of misrepresentation claim, which the statute does not appear to be afford, there is no basis to find Langron claimed, attempted or threatened to enforce a right he did not have.

In short, plaintiff simply fails to connect the dots on any of her statutory claims.[3] Accordingly, the court also will grant summary judgment to defendant Phantom on Count 3.

---

[3] In this case, the court does not comment on whether plaintiff may have a common law fraudulent misrepresentation claim, although there appears to be no basis to find reasonable reliance on Langron's lay opinion as to the law, particularly where she acknowledges having been told as much by an attorney.

ORDER

IT IS ORDERED that:

1) Defendants Phantom Recovery LLC and Santander Consumer USA Inc.'s motion for summary judgment (dkt. #40) is GRANTED.

2) Plaintiff Kinzie Steube's motion for judgment on the pleadings (dkt. #28) and motion for partial summary judgment (dkt. #46) are both DENIED AS MOOT.

3) The December 17, 2020, telephonic status conference set with Judge Crocker is CANCELED.

4) The clerk's office is directed to enter judgment in favor of defendants.

Entered this 16th day of December, 2020.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge